WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hubert Washington, Jr., | No. CV 13-01317-TUC-BPV |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

Petitioner has filed a *pro se* Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. (Doc. 1). Respondents initially filed a "Limited Answer" wherein they argued that Petitioner's claims were barred by the statute of limitations and, alternatively, were procedurally defaulted. (Doc. 12). This Court determined that the Petition was timely filed, but dismissed Ground One (b) and Grounds Two and Three as procedurally defaulted and directed Respondents to file an answer addressing the merits of Ground One (a) and (c).[1]  (Doc. 18).  Respondents have now filed their Supplemental Answer

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties consented to proceed before a United States Magistrate Judge for any and all further proceedings in this case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed.  (Docs. 15, 16).

(Doc. 19) and Petitioner has filed a Reply to Respondents' Supplemental Answer. (Doc. 20). Petitioner has also filed a Motion Requesting Release from Prison Pending the Court's Ruling (Doc. 21) which Respondents oppose (Doc. 22). For the reasons discussed below, the Court: (1) denies Petitioner's Petition for Writ of Habeas Corpus; and (2) denies Petitioner's Motion Requesting Release from Prison Pending the Court's Ruling.

**I.  Factual and Procedural Background**

Petitioner stands convicted of two counts of sexual assault. (*See* Doc. 12, Exh. J at 2). He was sentenced to consecutive prison terms totaling twelve years and three months. (Doc. 12, Exh. J at 2). The Arizona Court of Appeals summarized the facts as follows:

> [Petitioner] gave the victim, his cousin, a ride and engaged in a series of sexual acts with him. The acts took place in a van and at an apartment, in the shower and on the bed. The victim repeatedly told [Petitioner] that he did not want to engage in the behavior and tried to push him away. After [Petitioner] dropped him back off near his place of work, the victim called the police and reported the attacks. [Petitioner] was charged with three counts of sexual assault, and a jury found him guilty on two of those counts.

*Id.*

As discussed in further detail in this Court's January 22, 2015 Order, Petitioner, through counsel, filed an appeal raising three issues. (Doc. 18 (citing Doc. 12, Exh. G)). The appellate court affirmed the convictions and sentences and the Arizona Supreme Court denied Petitioner's Petition for review. (Doc. 12, Exhs. G, J, M).

Additionally, Petitioner, through counsel, filed a Rule 32 Petition for Post-Conviction Relief ("PCR Petition") alleging that he was deprived of his state and federal constitutional rights to effective assistance of counsel because: (1) trial counsel failed to object to the jury instruction that defined sexual assault incorrectly by eliminating the *mens rea* as to the lack of consent, and appellate counsel was ineffective for failing to raise this issue as fundamental error; and (2) trial counsel was ineffective for failing to object to improper vouching by the prosecutor during closing argument. (Doc. 12, Exh. Q). The trial court summarily denied Petitioner's PCR Petition. (Doc. 12, Exh. U.).

Thereafter, Petitioner filed a *pro se* motion for rehearing, which the trial court denied. (Doc. 12, Exhs. V, W).

Through counsel, Petitioner filed a petition for appellate court review of the trial court's denial of his PCR Petition. (Doc. 12, Exh. X). After permitting Petitioner to file supplemental authority in support of his argument that the jury instruction given by the trial court constituted fundamental error, the appellate court granted review, but denied relief. (Doc. 12, Exh. CC). The Arizona Supreme Court subsequently denied Petitioner's petition for review. (Doc. 12, Exh. FF).

As discussed in this Court's January 22, 2015 Order, at issue are Petitioner's claims raised in his federal Petition for Writ of Habeas Corpus that: (1) "the Prosecutor misled the jury on the law she claimed I violated by leaving out, Intentionally or Knowingly, from [A.R.S. §] 13-1406, any variation on what's already written is a violation of my fifth and fourteenth Amendment rights, and my attorney, knew the Prosecutor was going to do this because it was discussed between the judge, Prosecutor, and Mr. Kingston my defence [sic] attorney[]" (Ground One (a)); and (2) trial counsel rendered ineffective assistance by failing to object to the prosecutor vouching for the victim by invoking the victim's call to the 911 operator during closing argument (Ground One c)). (Doc. 1 at 6). The Court directed the parties to address the merits of these claims in their supplemental briefing.[2] (Doc. 18 at 13).

---

[2] Although Petitioner filed a Reply to Respondent's Supplemental Answer (Doc. 20), the majority of Petitioner's comments address his contention that PCR counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to the prosecutor's statements regarding the victim's inability to consent to the sexual acts due to mental impairment, as alleged in Ground One (b) of his federal habeas petition. This Court previously held that Ground One (b) is procedurally defaulted. (Doc. 18 at 11–12). To the extent Petitioner is alleging the ineffectiveness of PCR counsel as a new claim, he has failed to seek leave to amend his Petition to include such a claim. Further, amendment would be futile as the claim is untimely and Petitioner cannot raise ineffectiveness of PCR counsel as a freestanding constitutional claim. *See Coleman v. Thompson,* 501 U.S. 722, 756–57 (1991) ("a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review[.]"); *Martinez v. Ryan,* _ U.S. _, 132 S.Ct. 1309, 1315 (2012). Moreover at this point in the proceeding, any argument about PCR counsel's conduct is not properly before the Court given that the parties were granted leave to file supplemental briefing to address Ground One (a) and (c) only. (Doc. 18 at 13).

## II. DISCUSSION

### A. STANDARD FOR REVIEW OF HABEAS CLAIMS ON THE MERITS

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* at § 2254(d)(2).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the United States Supreme Court which existed at the time the petitioner's state court conviction became final. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Renico v. Lett*, 559 U.S. 766, 778–79 (2010)); *see Carey v. Musladin*, 549 U.S. 70, 76–77 (2006). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams,* 529 U.S. at 381; *see Musladin*, 549 U.S. at 77. Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir. 2003) *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a

new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407.  For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002).

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter,* 562 U.S. at 101. Accordingly, to obtain habeas relief from this Court, Petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see Frost v. Pryor*, 749 F.3d 1212, 1225–1226 (10th Cir. 2014) ("[I]f all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable . . . If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied.").

With respect to § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–342 (2006); see *Hurles v. Ryan,* 752 F.3d 768, 778 (9th Cir. 2014)

(explaining that on habeas review a court "cannot find that the state court made an unreasonable determination of the facts in this case simply because [the court] would reverse in similar circumstances if th[e] case came before [it] on direct appeal").

As the Ninth Circuit has explained, to find that a factual determination is unreasonable under § 2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds as discussed in Murray v. Schriro,* 745 F.3d 984, 999–1000 (9th Cir. 2014). "This is a daunting standard—one that will be satisfied in relatively few cases." *Id.*

The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). The Supreme Court has not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), but has clarified "'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *See Burt v. Titlow*, __ U.S. __, 134 S.Ct. 10, 15 (2013) (quoting *Wood*, 558 U.S. at 293, 301).

Significantly, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182; *see Murray v. Schriro*, 745 F.3d at 998 ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)."). The Ninth Circuit has observed that "*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well." *Gulbrandson v. Ryan*, 738 F.3d 976, 993 n. 6 (2013) (citing § 2254(d)(2) and *Pinholster*, 563 U.S. at 184 n. 7). Therefore, the Ninth Circuit has explained:

> [F]or claims that were adjudicated on the merits in state court, petitioners can rely only on the record before the state court in order to satisfy the requirements of § 2254(d). This effectively precludes federal evidentiary hearings for such claims because the evidence adduced during habeas

- 6 -

proceedings in federal court could not be considered in evaluating whether the claim meets the requirements of § 2254(d).

*Gulbrandson,* 738 F.3d at 993–94 (internal citation omitted).

### B. STANDARD FOR ASSESSING CLAIMS OF INEFFECTIVE ASSISTANCE

Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, the petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687–88.

To satisfy *Strickland's* first prong, the petitioner "must overcome the presumption that, under the circumstances, the challenged action []might be considered sound trial strategy.[]" *Id.* at 689 (internal quotation marks omitted). With respect to *Strickland's* second prong, a petitioner must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland's* high bar is never an easy task."); *Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010). When the standards created by *Strickland* and § 2254(d) apply in tandem, review is "doubly" deferential. *Richter*, 562 U.S. at 105 (citations and quotations omitted). "[T]he question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.   See also Bell v. Cone*, 535 U.S. 685, 698 (2002) (internal quotations omitted).

#### 1. GROUND ONE (A)

In Ground One (a), Petitioner alleges that trial counsel was ineffective for failing

- 7 -

to object to the jury instruction on sexual assault, A.R.S. § 13-1406, which omitted "Intentionally or Knowingly". (Doc. 1 at 6).

### a.   THE STATE COURT PROCEEDING

In his PCR Petition, Petitioner claimed that the jury instruction defining sexual assault under A.R.S. § 13-1406(A) was deficient because it did not state that a person must know that the other person did not consent to the sexual conduct. (Doc. 12, Exh. Q at 2–3). A.R.S. § 13-1406(A) provides that: "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." (Doc. 12, Exh. U at 3). In Petitioner's case, the trial court instructed the jury as follows:

> The crime of sexual assault requires proof of the following:
> 1.   The defendant intentionally or knowingly engaged in either sexual intercourse or oral sexual contact with any person; and
> 2.   The sexual intercourse or oral sexual contact was without the consent of such person.

(RT 1/30/09 at 25).[3]

Petitioner argued in his PCR petition that the instruction allowed the jury to find him guilty so long as it found that the victim had not consented to the sexual contact, regardless of whether Petitioner knew of the lack of consent. (*See* Doc. 19 at 5; Doc. 12, Exh. Q at 3). Petitioner went on to argue that trial counsel was ineffective for failing to object to the instruction that Petitioner contended resulted in relieving the prosecution of its burden of proving all elements of the offense. (*See* Doc. 19 at 5; Doc. 12, Exh. Q at 4). Petitioner also argued that appellate counsel was ineffective for failing to raise the issue on direct appeal. (*See* Doc. 19 at 5; Doc. 12, Exh. Q at 5).

The trial court, citing *Strickland* among other cases, summarily denied Petitioner's claim. The court pointed out that the instruction given "was nearly verbatim[] to the elements of A.R.S. §13-1406 as described by the Arizona Supreme Court, including

---

[3] The trial transcripts cited in this Order are in the record as exhibits to Respondents' Supplemental Answer (Doc. 19).

keeping the 'consent' element separate from the 'knowingly' element." (Doc. 12, Exh. U at 5). The court went on to state:

> Further, there is no factual issue that the contact was without the consent of the victim. In fact, the Court of Appeals [on direct appeal] specifically found that Petitioner failed to present any evidence that the acts were consensual, and that the victim had specifically testified that the acts were not consensual. Petitioner's Petition, Exh. E at 8: ¶16. The Court of Appeals stated clearly: "beyond a reasonable doubt that the jury would not have accepted the consent defense in any event . . . *id.* Therefore, even if the instruction issue . . . was improper, the error was certainly harmless, and did not prejudice the Petitioner . . . .Thus, trial and appellate counsel were neither ineffective, nor caused the petitioner prejudice. . . ."

(*Id.*).

While Petitioner's petition for review of the trial court's denial of his PCR Petition was pending, Division One of the Arizona Court of Appeals held that the same sexual assault instruction that was given in Petitioner's case did not "properly instruct on the *mens rea* applicable to the consent element of the crime. . . .The instruction thus improperly relieved the State of its burden of proving an element of the offense, in violation of [defendant's] constitutional right to have a jury determine his guilt as to every element of the crime." *State v. Kemper*, 229 Ariz. 105, 106–07, 271 P.3d 484, 485–86 (App. 2011). Petitioner's PCR counsel filed a motion to permit supplemental citation of legal authority on review to inform the appellate court about the *Kemper* decision, and the appellate court granted the motion. (Doc. 12, Exhs. Y, Z).

The appellate court granted review but denied relief. In doing so, the court pointed out that the instruction was "nearly identical to the instruction contained in the Revised Arizona Jury Instruction (Criminal) ('RAJI')…" at the time of Petitioner's trial. (Doc. 12, Exh. CC at 4). The court also acknowledged that in light of the *Kemper* decision, Petitioner's "trial and appellate counsel had available an apparently meritorious claim that the jury instruction incorrectly stated the law." (*Id.*). However, the court went on to state that the "mere fact that counsel forgoes a meritorious claim does not establish that counsel's conduct fell below prevailing professional norms. The Sixth Amendment

- 9 -

1 does not entitle a defendant to mistake-free representation." (*Id.*) (citations omitted).
2 The court held that Petitioner failed to establish that his attorneys' conduct fell below
3 prevailing professional norms given that Petitioner did not present any support for his
4 allegation "that counsel's failure to object to, or raise on appeal an argument related to, a
5 standard RAJI instruction that is clearly applicable to the case falls below prevailing
6 professional norms." (*Id.* at 5). The court also pointed out that "[a]t the time of trial and
7 during his appeal, [Petitioner's] counsel did not have the benefit of *Kemper's* direct
8 holding that an identical instruction was fundamental error. *Cf.* [*State v. Febles,* 210
9 Ariz. 589, ¶24, 115 P.3d 629, 636 (App. 2005)] ('There is a difference between
10 ignorance of controlling authority and the failure of an attorney to foresee future
11 developments in the law')." (*Id.*) (internal quotations and citation omitted). The court
12 stated that based on the existing case law at the time, "counsel might have determined
13 that an objection or appellate argument based on the jury instruction would not have been
14 successful." (*Id.* at 5–6). The court also recognized that the decision to winnow out
15 weaker arguments on appeal to focus on those more likely to prevail is an acceptable
16 exercise of professional judgment. (*Id.* at 6) (citation omitted). Accordingly, the
17 appellate court held that that Petitioner failed to "establish a colorable claim that his
18 counsels' conduct fell below prevailing professional norms. . . ." (*Id.*).

### b.   ANALYSIS

20 In Petitioner's case, the trial and appellate courts cited *Strickland* when evaluating
21 the claims of ineffective assistance of counsel. (*See* Doc. 12, Exhs. U, CC). The state
22 court, in applying *Strickland*, applied the correct law to the issue. *See Dows v. Wood*, 211
23 F.3d 480, 484–85 (9th Cir. 2000) (*Strickland* "is considered in this circuit to be 'clearly
24 established Federal law, as determined by the Supreme Court of the United States' for
25 purposes of 28 U.S.C. § 2254(d) review."). Moreover, the state court's adjudication of
26 Petitioner's claim was not an unreasonable application of the *Strickland* standard.
27 As the state court recognized, under the *Strickland* analysis, the issue is whether
28 "counsel made errors so serious . . ." that "counsel's representation fell below an

objective standard of reasonableness" under prevailing professional norms. *Strickland,* 466 U.S. at 687–688. The relevant inquiry is not what defense counsel could have done, but, rather, whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689

In following *Strickland's* direction to evaluate counsel's conduct at the time of alleged error, the state court reasonably concluded that Petitioner failed to establish that either trial counsel's or appellate counsel's conduct was deficient.  At the time of Petitioner's trial and appeal, *Kemper* had not yet been decided.  There is no dispute that the instruction given in Petitioner's case was virtually identical to the standard instruction set out in the RAJI. Nor is it disputed that Petitioner failed to submit any evidence or authority that would support a conclusion that counsel's performance falls below professional prevailing norms when counsel fails to challenge a standard RAJI instruction that is clearly applicable to the case.  Additionally, as the state court pointed out, at least one other Arizona case had already "rejected an argument that a jury instruction arguably similar to the one given [in Petitioner's case] . . . was defective in part because the jury was instructed that 'knowingly' applies to the 'conduct or circumstances constituting the offense.'"  (Doc. 12, Exh. CC at 6 (citing *State v. Witwer,* 175 Ariz. 305, 309, 856 P.2d 1183, 1187 (App. 1993)).[4]  Thus, even had counsel perceived a potential claim related to

---

[4] In *Witwer,* the court rejected the defendant's argument "that the instruction was

1   the instruction, it was reasonable for counsel to determine that such a challenge would
2   not be successful in light of the status of the law at the time.  Indeed, the trial court when
3   denying Petitioner's PCR Petition, prior to issuance of the *Kemper* decision, rejected
4   Petitioner's argument that *mens rea* should have been included in both elements of the
5   sexual assault instruction.  (Doc. 12, Exh. U at 4–5 (citing *Witwer,* 175 Ariz. at 308, 856
6   P.2d at 1186, among other cases)).

On the instant record, the state court ruling on this issue was not contrary to, nor an unreasonable application, of *Strickland.*  Nor did the state court's ruling result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented during the state court proceeding.

### 2. GROUND ONE (C)

Petitioner asserts that his trial counsel was ineffective in failing to object when the prosecutor vouched for the victim during closing argument with reference to the victim's 911 call.  (Doc. 1 at 6).

#### a. THE STATE COURT PROCEEDING

The victim, whose first name is Marcus, testified that after he was sexually assaulted, Petitioner dropped him off at "First and Grant" [a location near Marcus's place of employment], and Marcus then "called the cops."  (RT 1/28/09 at 82; *see also id.* at 81, 87).  When asked whether he told "the cops what happened[]", Marcus answered "Yes."[5]  (*Id.* at 82–83).  Marcus also testified that he gave the 911 operator Petitioner's

---

not adequate, and that the judge should also have [instructed that:] . . . 'Without consent' means that the Defendant was aware or believed that the other person was coerced by the immediate or threatened use of force . . . ."  *Witwer*, 175 Ariz. at 308, 856 P.2d at 1186. In later determining that the sexual assault RAJI was erroneous, the *Kemper* court noted that "[t]he superior court was not asked to instruct jurors about the 'without consent' definition contained in A.R.S. [§] 13–1401(5). Whether such an instruction would have cured the deficiency in the sexual assault RAJI is a question we need not decide. Standing alone, the RAJI was clearly inadequate and legally erroneous." *Kemper,* 229 Ariz. at 107 n.2, 271 P.3d at 486 n.2.  Respondents assert that because Petitioner's jury received an additional instruction on the definition of "without consent" that was not given in *Kemper,* Petitioner's situation is not identical to that in *Kemper.* (Doc. 19, at 6; *see also* RT 1/30/09 at 25).

[5] Marcus testified as follows:

- 12 -

license plate number. (*Id.* at 125). Samuel Thompson, who was a police officer at the time of the incident, testified that he responded to Marcus's 911 call reporting a sexual assault. (*Id.* at 138–39).

> In closing argument, the prosecutor stated:
>> Some of you may be thinking that it couldn't be rape because we heard from Marcus. We saw him testify. And he was confused in some [sic] his answers. And, gee, it sounds like he will say whatever the person who is asking him the questions wants him to say. And I want to address that, ladies and gentlemen.
>> I want to address that and remind you of the very first call that Marcus made, the 911 call. In that call, he reports the rape. He reports the acts, the oral sex, the anal sex, and he reports that his cousin was the perpetrator.
>> He also gives the 911 operator the defendant's license plate number and tells that operator where the defendant lives, the location.
>> Now, in that call, ladies and gentlemen, there was nobody asking him leading questions. There was nobody suggesting answers to him. He provided that information because that was based on the experience that he had just had with his cousin, the defendant.

(RT 1/30/09 at 29).

> Later in the closing argument, the prosecutor stated:
> Marcus finally has a chance to get away from that apartment, and, within an hour, we heard Marcus makes that call to 911. He makes that call to 911, and he gives the operator those details that I just recounted for you. And the event was fresh in his mind. It wasn't almost a year-and-a-half later as it was when you heard him testify. The event was fresh. He recounted

---

| | |
|---|---|
| Q. [prosecutor:] | So once you get back in the van, he drops you off at First and Grant? |
| A. [Marcus:] | Yes. |
| Q. | When he drops you off, what is the very next thing you do? |
| A. | I called the cops. |
| Q. | Do you tell the cops what happened? |
| A. | Yes. |

(RT 1/28/09 at 82). Marcus went on to testify that when he was interviewed by the police, he told them where Petitioner lived and described Petitioner's apartment and van. (RT 1/28/09 at 82–83).

- 13 -

> those details because that is what he had experienced at the hands of the defendant, his cousin.

(*Id.* at 31–32).

In his PCR Petition, Petitioner asserted that the prosecutor's argument was improper because the victim's statements to the 911 operator had not been admitted into evidence. Petitioner argued that the prosecutor's statements "informed the jury that the prosecutor knew of evidence that, in her opinion, corroborated [the victim's] testimony." (Doc. 12, Exh. Q at 10). Petitioner further argued that his trial counsel was ineffective for failing to object on the grounds of prosecutorial vouching. (*Id.* at 11).

The trial court rejected Petitioner's claim, finding "counsel was not ineffective as there was no prosecutorial vouching…." (Doc. 12, Exh. U at 8). In so holding, the trial court stressed that the victim

> testified that he called 911 and conducted an interview with the police where he described the details of what happened. . . .The Prosecutor prefaced the quoted "vouching" by referring to the victim's testimony and how "he was confused in some [of] his answers.". . . . By emphasizing the closeness in time between the assaults and the phone call to police in closing argument, the Prosecutor was simply addressing the issue of the victim's memory problems, and the facts surrounding the phone call the victim made to police.

(*Id.* at 7–8). The court also pointed out that the jury had been instructed that the anything said during closing arguments was not evidence. (*Id.* at 7).

On review, the appellate court denied relief, holding that "even assuming the prosecutor's statements were improper, [Petitioner] has not demonstrated that his trial counsel's performance fell below prevailing professional norms when he failed to object." (Doc. 12, Exh. CC at 7). The court pointed out that counsel could have had strategic reasons for not objecting such as a belief that interrupting the prosecutor's closing argument would distract the jury or draw attention to the purportedly improper comments. (*Id.*).

### b. ANALYSIS

Generally, a prosecutor may not express his opinion of the defendant's guilt or his belief that in the credibility of government witnesses. *United States v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir. 1993) (citing *United States v. Molina,* 934 F.2d 1440, 1444 (9th Cir. 1991). Prosecutorial "[v]ouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *Id.* (internal citations omitted); *see also State v. Vincent,* 159 Ariz. 418, 423, 768 P.2d 150, 155 (1989).

The state appellate court did not unreasonably apply *Strickland* in concluding that that trial counsel was not ineffective on this point. "Although '[t]he right to effective assistance extends to closing arguments,' *Yarborough* [*v. Gentry*, 540 U.S. 1, 5 (2003)]. . ., failure to object during a closing summation generally does not constitute deficient performance. '[A]bsent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct.' *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (internal quotation marks omitted)." *Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir. 2015); *see also Necoechea,* 986 F.2d at 1281 (noting that "many lawyers refrain from objecting during opening statement and closing argument….")). The Supreme Court has "admonish[ed] that 'courts may not indulge *post hoc* rationalizations for counsel's decisionmaking that contradicts the available evidence of counsel's actions.'" *Zapata,* 788 F.3d at 1116 (*quoting Richter,* 562 U.S. at 108) (holding that counsel's conduct fell below an objective standard of reasonableness where counsel failed to object to prosecutor's repeated remarks during rebuttal closing that were "fabricated from whole cloth, designed to inflame the passions of the jury and delivered in the waning moments of trial" and were "egregious misstatements").

As set out above, although the evidence presented at trial did not include the full contents of the 911 call, the evidence that was presented established that following the sexual assaults, the victim called "the cops", provided Petitioner's license plate number and enough

- 15 -

information for the responding officer to know that he was responding to a sexual assault call. Additionally, the court had already instructed the jurors that the lawyers' statements in closing argument were not evidence. The state court opined that Petitioner's trial counsel may not have objected because he "may have believed interrupting the state's closing argument would distract the jury or draw attention to the prosecutor's purportedly improper comments." (Doc. 12, Exh. CC at 7). On habeas review, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter,* 562 U.S. at 105. On the instant record, trial counsel's decision not to object to the prosecutor's "statements possibly to avoid highlighting them, was a reasonable strategic decision." *See e.g. Cunningham,* 704 F.3d at 1159 ("Under *Necoechea*, . . .[counsel's] decision not to object to . . . [the prosecutor's] comments [in closing argument], possibly to avoid highlighting them, was a reasonable strategic decision."). Consequently, the state court's ruling on this issue was not contrary to, nor an unreasonable application, of *Strickland.* Nor did the state court's ruling result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented during the state court proceeding. Petitioner's Ground One (c) is without merit.

### III. PETITIONER'S MOTION REQUESTING RELEASE FROM PRISON PENDING THE COURT'S RULING

Petitioner requests release from prison pending the Court's decision on his habeas petition. (Doc. 21). Respondents oppose the request, stressing that Petitioner is not entitled to any relief under his pending Petition. (Doc. 22). As discussed above, Petitioner's Petition for Writ of Habeas Corpus is without merit. Consequently, Petitioner's instant motion is moot.

### IV. CONCLUSION

For the foregoing reasons, Grounds One (a) and One (c), which are the only claims raised in Petitioner's habeas petition that may be addressed on the merits, do not warrant habeas relief because the state court decision addressing both issues did not "result[] in a

decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). Nor has there been any showing that the state court decision on the issues here "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner's Petition for Writ of Habeas Corpus is denied. Additionally, Petitioner's Motion Requesting Release from Prison Pending the Court's Ruling is denied as moot.

## V. CERTIFICATE OF APPEABILITY

In the event Petitioner appeals from this Court's judgment, and in the interests of conserving scarce resources that otherwise might be consumed drafting an application for a certificate of appealability to this Court, the Court on its own initiative has evaluated the claims within the Petition for suitability for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a Certificate of Appealability ("COA") may issue only when a petitioner "has made a substantial showing of the denial of a constitutional right." This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.*

Upon review of the record in light of the standards for granting a certificate of appealability, the Court concludes that a certificate shall not issue as the resolution of the

////

////

////

instant Petition is not debatable among reasonable jurists and does not deserve further proceedings. Accordingly,

IT IS ORDERED as follows:

(1) Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) is DENIED with prejudice.

(2) A Certificate of Appealability is DENIED and shall not issue.

(3) Petitioner's Motion Requesting Release from Prison Pending the Court's Ruling (Doc. 21) is DENIED as moot.

The Clerk of Court is DIRECTED to enter judgment accordingly and to close the file in this matter.

Dated this 24th day of May, 2016.

*Bernardo P. Velasco*
Bernardo P. Velasco
United States Magistrate Judge